

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 10 2005
CLERK, U.S. DISTRICT COURT
By _____
Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| O.C. HAWLEY, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:04-CV-296-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff O.C. Hawley, Jr., seeks judicial review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision.

### I.   Standard of Review

Judicial review of the Commissioner's denial of Social Security benefits is limited to two issues: (1) whether the Commissioner's final decision is supported by substantial evidence, and (2) whether the Commissioner used proper legal standards to evaluate the evidence. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (citations omitted).

## II.   Statement of the Case

Hawley applied for disability benefits on December 31, 2002. (Tr. 54.) At that time he was 47 years old and previously worked as a supervisor and superintendent of a cotton seed oil mill. (*Id.*, Tr. 75.) He testified before an Administrative Law Judge (ALJ) that he quit working at the mill on March 15, 2002, because the mill closed. (Tr. 221.) He testified that his health began to decline about one and one-half years before the mill closed which made it difficult for him to perform his duties and, further, that because of his health problems he was not sure whether he could have continued working had the mill not closed. (Tr. 221.) Specifically, he claimed that it was difficult for him to perform his duties because he experienced weakness and could not walk far and problems with his knees and legs made it difficult for him to "just walk, get around." (*Id.*)

Hawley testified that he underwent arthroscopic surgery on his right knee in 2001, had problems associated with the cartilage in both of his knees, experienced swelling in both of his legs, and began using a cane to help him walk after his surgery in 2001. (Tr. 221, 225, 227.) He claimed that before his employment ended, he was not able to do the heavy work that he once did but was able to work despite the problems in his knees and legs by walking to different departments and sitting while he talked to the employees he supervised. (Tr. 222, 224.) He further testified that despite his medical problems, he continued working and hid his symptoms from his employer because he did not want to lose his job. (Tr. 221-22.)

The ALJ acknowledged that Hawley had severe impairments including sleep apnea, low blood oxygen, shortness of breath, knee pain, and a history of heart failure. (Tr. 16, 19.) He also acknowledged and summarized his medical treatment history, which included treatment for hypertension, edema, morbid obesity, and health problems associated with smoking. (Tr. 16-17.) Despite these medical conditions, the ALJ determined that Hawley retained the residual functional capacity to perform sedentary work. (Tr. 18.) Because Hawley's work as a mill supervisor and superintendent was determined to be light work, the ALJ determined that he could not return to that work. (Tr. 18; *see* Tr. 230.) Turning then to the Medical-Vocational Guidelines (the grids), he determined that Rule 201.19 directed a conclusion that Hawley was not disabled. (Tr. 18-19.) The Appeals Council denied Hawley's request for review and the ALJ's decision became the Commissioner's final decision for purposes of the court's review. (Tr. 3-6); 20 C.F.R. § 404.981 (2004).

Hawley objects to the Commissioner's decision that he is not disabled on three grounds. He contends the ALJ failed to properly consider his obesity, erred in relying on the grids to determine that he was not disabled, and failed to support his decision with substantial evidence.

### III.  Discussion

Under Social Security Ruling (SSR) 02-01p, an ALJ must consider the effects of a claimant's obesity on his or her ability to perform physical activity in the work environment. S.S.R. 02-01P, 2000 WL 628049 at *5. Further, the ALJ must consider the combined effect

of the claimant's obesity with other impairments. *Id.* at * 6. Hawley claims the evidence shows that his obesity is severe and that the ALJ should have individually assessed the impact of his obesity on his residual functional capacity. In support of his argument he cites to a number of statements regarding his obesity made by consulting and examining physician Mourad L. Mansour, M.D., regarding his obesity.

Hawley's arguments must be rejected. The ALJ specifically cited to nearly all of the evidence from Dr. Mansour to which Hawley refers. He cited Dr. Mansour's note that Hawley is six foot two inches tall and weighs between 370 and 375 pounds. (Tr. 16, 104.) He noted Dr. Mansour's opinion that Hawley's shortness of breath was partially caused by his weight and exogenous obesity in addition to his notation that Hawley had been "very heavy set and overweight for most of his life and that there [had] not been any significant change [in his weight] recently." (Tr. 16, 104, 106.)

That the ALJ did not specifically state that Hawley's obesity was a "severe impairment" does not deprive his decision of substantial evidence. The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The first two steps of the evaluation involve threshold determinations that the claimant is not presently working and that he or she has an impairment or combination of impairments that are severe. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If the ALJ determines at the second step that the claimant has a severe impairment, he proceeds to the subsequent steps in order to determine whether the claimant is disabled.

20 C.F.R. § 404.1520. Because determining whether a claimant has severe impairments is merely a threshold determination, failure to specifically identify an impairment as severe is not reversible error. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

The evidence demonstrates that Hawley's obesity was not disabling either alone or in combination with his other impairments. Examination shows that despite his weight, Hawley was freely ambulatory; able to lift, carry, and handle objects; and able to sit, stand, and get on and off an examining table. (Tr. 105.) In addition, despite his weight, Hawley routinely exercised on a stationary bicycle. He reported to Dr. Mansour that he was able to ride the stationary bicycle for five to ten minutes and reported on application documents that he exercised on the stationary bicycle for twenty minutes per day. (Tr. 61, 205.)

Finally, it is significant that Hawley's treating physician diagnosed him as being "grossly obese" before he quit working at the cotton seed oil mill. (Tr. 166.) The fact that Hawley worked despite his weight demonstrates that his obesity is not a disabling impairment. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (citing *Fraga v. Bowen,* 810 F.2d 1296, 1305 & n. 11 (5th Cir.1987) (claimant's ability to work despite pre-existing condition supported ALJ's finding that he was not disabled)); *see also Johnson v. Bowen*, 864 F.2d 340, 347-48 (5th Cir. 1988) (finding that the claimant worked despite impairments supported ALJ's findings).

Although it would have been helpful had the ALJ discussed the foregoing evidence, his failure to do so may be characterized as harmless error and as such does not require remand. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (remand not required in

cases in which the ALJ would not have reached a different conclusion in absence of the error).

Remand is likewise not required under Hawley's contention that the ALJ erred in relying on the grids. Located in the regulations at appendix 2 of part 404, subpart P, the grid rules are divided into categories based on residual functional capacity or work capability. Within each category of residual functional capacity, a matrix of three factors, including age, education, and work experience are utilized to determine whether the claimant can perform jobs that exist in significant numbers in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983); 20 C.F.R. pt. 404, subpt. P. app. 2.

The ALJ is authorized to consult the grids after determining that the claimant cannot return to his past work in order to determine whether he can engage in other work activity. *See Heckler*, 461 U.S. at 461-62. However, reliance on the grids is appropriate only when the claimant's characteristics coincide with the criteria in the grids. *Underwood v. Bowen*, 828 F.2d 1081, 1082 (5th Cir. 1987), *cert. denied*, 484 U.S. 1029 (1988). Thus, it is well-established that an ALJ may rely exclusively on the grids in cases in which the claimant suffers only from exertional impairments or has non-exertional impairments that do not significantly affect his ability to work; otherwise, the ALJ must elicit vocational expert testimony. *See, e.g., Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999). Hawley's contention is that reliance on the grids was precluded in his case because he testified that he had problems with balancing and because a State agency physician indicated that he had

postural limitations in the area of climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 126.)

Although the evidence Hawley cites does appear in the record, the evidence does not compel a finding that reliance on the grids was improper. In cases in which allegations of non-exertional limitations are at issue, the relevant inquiry is not whether the limitations diminish the claimant's abilities but whether the limitations would significantly affect the claimant's residual functional capacity. The distinction is illustrated in *Fraga v. Bowen*, 810 F.2d 1296 (5th Cir. 1987).

In *Fraga*, the ALJ found that the claimant could perform a full range of light work and relied on the grids to determine that he was not disabled. On appeal, the claimant argued in part that his pain was a non-exertional impairment that precluded reliance on the grids. The court noted that the only physical limitation in the record related to repetitive bending and stooping and lifting objects weighing more than 35 pounds. *Id.* at 1304. The court reasoned that because light work activity, as defined in the regulations, does not require repetitive bending or stooping or lifting objects weighing over 35 pounds, substantial evidence supported the ALJ's finding that the claimant did not have non-exertional impairments. *Id.*

In this case, Hawley retains the ability to perform sedentary work. According to the regulations, sedentary work involves lifting no more than 10 pounds at a time; occasionally lifting or carrying items such as docket files, ledgers, and small tools; and occasional walking and standing. 20 C.F.R. § 404.1567(a). A sedentary job generally involves sitting but a certain amount of walking and standing is often necessary in carrying out job duties. *Id.*

Because sedentary work is primarily performed while sitting, postural limitations related to climbing, balancing, stooping, kneeling, crouching, and crawling would not significantly affect, if at all, Hawley's ability to perform sedentary work. Therefore, the ALJ's reliance on the grids was not improper. *See Fraga*, 810 F.2d at 1304.

Finally, contrary to Hawley's last argument, the Commissioner's decision is supported by substantial evidence. Hawley contends that the ALJ relied on the opinion of the State agency physician, Dennis S. Paci, M.D., a non-specialist who had not examined him and had not reviewed records from his treating physician, Patrick J. Hanford, M.D. He claims Dr. Paci's opinions conflict with those provided by Dr. Hanford, and that the ALJ failed to consider Dr. Hanford's opinions and failed to give good cause for rejecting them.

Hawley's contentions are incorrect. The ALJ did not rely on Dr. Paci's opinion. In fact, he rejected the opinion. (Tr. 18.) Dr. Paci was of the opinion that Hawley could perform light work activity. (Tr. 125.) The ALJ determined that Hawley's residual functional capacity was more restricted than that found by Dr. Paci and determined that he could perform sedentary work. (Tr. 18.) Assuming for argument's sake that the ALJ had relied on Dr. Paci's opinion, Hawley's argument that the opinion conflicted with Dr. Hanford's opinions would also be incorrect because Dr. Hanford did not provide opinions regarding Hawley's ability to perform the physical requirements of work. (Tr. 132-216.) The ALJ did, however, consider Dr. Hanford's diagnoses and the treatment he provided Hawley and it is evident that the ALJ adopted the opinions, at least in part, because he determined that Hawley was capable of the lowest exertional level of work. (Tr. 16-18.)

It is the ALJ's duty to weigh the evidence and determine disability and the court's duty to determine whether the ALJ's decision is supported by substantial evidence. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). In this case, the ALJ's determination is supported by substantial evidence; therefore, the Commissioner's decision should be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

## IV.  Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Hawley's complaint with prejudice.

## V.  Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _____June 9_____, 2005.

NANCY M. KOENIG
United States Magistrate Judge